# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF SUFFOLK

MERRIMACK MUTUAL FIRE INSURANCE COMPANY a/s/o IVAN SIBAJA,

Plaintiff,

-against-

HONEYWELL INTERNATIONAL INC.,

Defendants.

**Index No.: 620304/2024**

**VERIFID COMPLAINT**

Plaintiff MERRIMACK MUTUAL FIRE INSURANCE COMPANY A/S/O IVAN SIBAJA, by their attorneys Goetz Schenker Blee & Wiederhorn LLP, as and for its Verified Complaint, upon information and belief, alleges as follows:

## THE PARTIES

1. At all relevant times herein, Merrimack Mutual Fire Insurance Company (hereinafter "Merrimack") was and is a corporation organized under the laws of the State of Massachusetts and is licensed to issue policies of insurance in the State of New York.

2. At all relevant times herein, defendant Honeywell International Inc., ("Honeywell"), was and still is a foreign business corporation organized in duly authorized, conducting business, and existing under and by virtue of the laws of the State of New York was and still is a company with its principal place of business located at: 855 S Mint St, Charlotte, NC 28202.

## NATURE OF THIS ACTION

3. This is a subrogation action brought by the first party property insurer, plaintiff Merrimack, as subrogee of Ivan Sibaja, ("Insured/Sibaja").

4. At all relevant times herein, the Insured Sibaja owned and/or resided in a residential home located at: 11 Rush Street Port Jefferson Station NY 11776-4101, (hereinafter "the Premises").

5. Merrimack made payments to the Insured in connection with a loss sustained by the Insured on December 9, 2023, which resulted from fire damage to the Premises and property owned by the Insured and the property contained therein (hereinafter "the Loss").

6. This action is brought against the parties responsible for the Loss and the resulting damage sustained by the subrogated insurance carrier, Merrimack.

7. At all relevant times hereinafter mentioned, Merrimack issued a policy of insurance (with Policy No. HP 13239653) to the Insured, which covered real and personal property at the Premises (hereinafter "the Policy").

8. Pursuant to the Policy and relevant law, Merrimack having paid amounts pursuant to the Policy in connection with the Loss, is subrogated to all of the Insured's rights as to third parties who owed a duty to Sibaja and caused or are responsible for the subject loss herein.

## FACTUAL ALLEGATIONS

9. Upon information and belief, Sibaja was experiencing problems with his current thermostat (Lux Thermostat, Model # ELV4) in the basement, relating the temperature at the Premises.

10. Upon information and belief, removed the Lux Thermostat and traveled to Home Depot located at 401 Independence Plaza Selden, NY 11784 on Saturday, December 9, 2023 (day of the fire), at 12:30 pm.

11. Upon information and belief, Sibaja showed the Lux Thermostat to a Home Depot to a sales associate in the "electric isle", and asked said Home Depot employee for a replacement thermostat.

12. Upon information and belief, a Home Depot Sales Associates advised Sibaja and took a Honeywell Home Non-Programmable Thermostat, Model #RHT111B1024 (hereafter

"Honeywell Thermostat") out of the box and showed Sibaja what wires to connect and where on the thermostat.

13. According to the Home Depot receipt, on Saturday December 9, 2023 (day of the fire) at 12:30 pm, Sibaja purchased the Honeywell Thermostat. The Depot receipt indicates that the store manager was Denise Luck. NYSCEF 3.

13. Thereafter, on December 9, 20023, Sibaja installed the Honeywell Thermostat and set it to 65 degrees at the Premises. Sabaja's cousin, Vinny Rosselli, lives in the basement at the Premises, and turned said Honeywell Thermostat to the 'on' position and left the area at approximately 5:30 pm, that same day.

14. Approximately two hours later, a fire ensued at the Premises, as Sabaja, was alerted to the fire by the sound of the smoke alarm downstairs at the Premises.

15. The subject Honeywell Thermostat lacks adequate, appropriate, informative, and/or necessary voltage information for proper installation within its Owner's Manual. NYSCEF

16. The subject Honeywell Thermostat was installed at the Premises and approximately two (2) hours later the physical evidence of the fire appeared to have originated at or near to the newly installed Honeywell Thermostat situated along the north wall within the basement of the Premises. NYSCEF 2.

**AS AND FOR A FIRST CAUSE OF ACTION**
(Sounding in Negligence)

17. Plaintiff repeats, realleges and reiterates herein the allegations contained in paragraphs "1" through "16" above inclusive as though more fully set forth herein at length.

18. On or about December 9, 2023, a fire loss event occurred at the Premises owned by the Insured/Sibaja.

19. Defendants, Honeywell, and/or its employees, agents and/or sales people owed a duty to plaintiff's subrogor, Sibaja so as to prevent the subject fire at the Sibaja Premises and/or otherwise creating a fire hazard and damaging the Premises and property of Sibaja due the subject Honeywell Thermostat, from the Home Depot, located at 401 Independence Plaza Selden, NY 11784 on Saturday December 9, 2023 (day of the fire) at 12:30 pm. NYSCEF 2.

20. Said Honeywell Thermostat Owner's Manual lacks adequate, appropriate, informative, and/or necessary voltage information for proper installation.

21. Upon information and belief, the fire loss event occurred at the Insured's Premises due to the breach of the duties owed to Sibaja by defendant Honeywell, which was caused, in whole or in part, by the negligence, carelessness, negligence *per se*, recklessness, and negligent actions and/or omissions on the part of defendant Honeywell in performing its required work and/or product recommendations to its customers because the Honeywell Thermostat and Owner's Manual is ill-suited for the subject voltage for subrogor, Sibaja, to purchase.

22. The subject Honeywell Thermostat was installed at the Premises and approximately two (2) hours later the physical evidence of the fire appeared to have originated at or near to the newly installed Honeywell Thermostat situated along the north wall within the basement of the Premises.

23. Plaintiff's subrogor was cased to sustain damage to the Premises and property through no fault or carelessness of its own, but solely due to the acts and/or omissions which constituted the negligence of the defendant Honeywell, their agents, servants, licensees and/or employees, in failing to use proper skill in the inspecting, marketing, labeling, installing, choosing and/or delivery of the Honeywell Thermostat; in failing to follow and/or adhere to basic, common, safety principles; in carrying out review of the proper and accurate voltage for the Honeywell Thermostat/Owner's Manual in a defective and improper manner; in failing to

warn; in failing to choose to the proper voltage for the heating system at the Premises with instructions, which became defective and was unsafe and hazardous; in failing to properly inspect, choose and delivery the aforesaid product; in failing to give proper and timely notice of the defective, unsafe and improper voltage of the labeled product, and improperly not providing for warnings, in accordance with the instructions of its use; and causing, creating and allowing a defective, improper product; by improperly giving and failing to give instructions thereby creating a dangerous condition with respect to the product and its use, and permitting it to remain and exist; in failing to provide proper safeguards and warnings to prevent property damage; in failing to warn the plaintiff's subrogor and others of the dangerous, improper Honeywell Thermostat Owner's Manual and negligently choosing the Honeywell Thermostat and allowing same for its use to the general public and/or the Insured; and in otherwise being careless and/or negligent under the circumstances.

24. Defendant Honeywell and/or their agents, servants, employees, and/or representatives were negligent in that they failed and neglected to:

A. Install, maintain, service regulate, monitor, renovate, inspect, and/or properly ascertain the correct voltage of a certain Honeywell Thermostat so as to prevent, limit and/or eliminate a fire loss event resulting therefrom;
B. Take adequate and necessary precautions with regard to the choosing of the correct/proper Honeywell Thermostat and/or Owner's Manual so as to prevent, limit, and/or eliminate a fire loss event resulting therefrom;
C. Exercise reasonable care and control over choosing the correct product for use with the heating system at the Premises so as to make sure that it was safe for its intended use;
D. Take such other actions or measures as to prevent, limit and/or eliminate the amount of damage to the Premises and property of Sibaja;
E. Notify and/or warn Sibaja of the dangers and hazards resulting from the failure to install a Honeywell Thermostat with the correct voltage for the heating system at the Premises so as to permit Sibaja to prevent, and/or limit the damage;
F. Perform, manage operate, control inspect, regulate, and supervise the work and activities of themselves, their agents, servants, employees, and/or representatives so as to prevent the damage to the Premises and property of Sibaja in recommended and/or choosing a Honeywell Thermostat was the incorrect voltage;
G. Take necessary precautions to safeguard the Premises of Sibaja from damage caused by an excess electrical (voltage) of the Honeywell Thermostat;

H. Take such actions as to prevent the subject fire at the Premises from causing damage to, and otherwise allowing an electrical fire hazard at the Premises:

I. Adequately and properly train, supervise, monitor, control, regulate, and otherwise instruct its agents, servants, employees and/or representatives in the choosing and/or recommendation of the subject Honeywell Thermostat so as to prevent, limit, and/or eliminate the damage to the Premises and property of Sibaja;

J. Maintain adequate personnel, supervision, materials and procedures so as to prevent, eliminate, and/or limit damage to the Premises and property of Sibaja.

25. As a direct and proximate result of the aforesaid fire loss event, which includes the constructive and actual notice to defendant Honeywell, the Insured sustained damage and destruction to its property in a fair and reasonable amount and believed to be in the sum of at least $584,321.40, with additional remaining payments. Merrimack is entitled to recover the $2,500 deductible on behalf of the Insured under the insurance policy.

26. Merrimack is thereby legally and equitably subrogated to the claims of the Insured against defendant Honeywell has been damaged in the sum of $584,321.40, no part of which has been paid by defendant Honeywell, although duly demanded. NYSCEF 4.

**AS AND FOR A SECOND CAUSE OF ACTION**
(Sounding in Breach of Contract)

27. Plaintiff repeats, realleges and reiterates herein the allegations contained in paragraphs "1" through "26" above inclusive as though more fully set forth herein at length.

28. Due to the agreement/receipt between plaintiff subrogor and Honeywell, defendant Honeywell owed and breached its contractual duties to plaintiff's subrogor Sibaja, in providing its services in a workmanlike and non-negligent fashion.

29. As a direct and proximate result of the aforesaid breach of contract, plaintiff's subrogor Sibaja was caused to sustain damage to her Premises and property, thereafter submitting a claim for damages pursuant to the Merrimack policy of insurance.

**AS AND FOR A THIRD CAUSE OF ACTION**
(Breach of Express & Implied Warranties)

30. Plaintiff repeats, realleges and reiterates herein the allegations contained in paragraphs "1" through "29" above inclusive as though more fully set forth herein at length.

31. At all times herein mentioned, defendant Honeywell committed a tortious act within the State of New York.

32. Specifically, the subject Honeywell Thermostat lacks adequate, appropriate, informative, and/or necessary voltage information for proper installation within its Owner's Manual.

33. At all times herein mentioned, defendant Honeywell regularly does or solicits business in the State of New York.

34. At all times herein mentioned, the defendant Honeywell received substantial revenue from goods used or consumed or services rendered in the State of New York.

35. At all times herein mentioned, the defendant Honeywell were in the business of designing, selling, manufacturing and distributing products including the subject Honeywell Thermostat, Owner's Manual, and/or associated equipment for the purpose of sale and use to the general public.

36. At all times herein mentioned, the defendant Honeywell were in the business of designing, selling, manufacturing, and/or distributing the Honeywell Thermostat Owner's Manual, and/or associated equipment for use to Sibaja.

37. Defendant Honeywell had designed, tested, manufactured, produced, inspected, marketed, sold or leased, distributed and/or installed a certain product, the Honeywell Thermostat/Owner's Manual, which was used in the Sibaja premises.

38. At all times herein mentioned, and prior to December 9, 2023, defendant Honeywell inspected, marketed, sold, distributed, and/or recommended to various customers and

to Sibaja, the said Honeywell Thermostat product (and Owner's Manual), which was used by Sibaja at the Premises.

39. Defendant Honeywell designed, tested, manufactured, inspected, marketed, sold and/or distributed a certain Honeywell Thermostat/Owner's Manual.

40. Defendant Honeywell serviced, repaired, modified, tested, installed, inspected and/or recommended for purchase a certain Honeywell Thermostat/Owner's Manual.

41. The aforementioned Honeywell Thermostat/Owner's Manual was ultimately purchased and used by the plaintiff's subrogor Sibaja.

42. Defendant Honeywell warranted that said product was fit for the purpose for which it was intended despite being the incorrect voltage for the Premises' heating system.

43. Defendant Honeywell expressly warranted that said product, the Honeywell Thermostat, was safe to use in every respect, and had been manufactured safely and warranted that it was in a safe and good condition for usage and proper to use.

44. Defendant Honeywell's implied warranty was that the said product was of merchantable quality and was safe for use and defendant and/or Honeywell warranted their product in connection with the use of the product.

45. The aforesaid accident was caused solely and wholly by reason that defendant Honeywell in that it breached their warranty of product merchantability and fitness for the intended use of the said product, which warranties were both express and implied.

46. The said products were defective and unreasonably dangerous and that said defective and unreasonably dangerous conditions were a substantial factor in causing the property damage to Sibaja.

47. By reason of the foregoing, the defendants Honeywell by their agents, licensees and/or employees are liable to plaintiff Merrimack for breach of implied warranties.

**AS AND FOR A FOURTH CAUSE OF ACTION**
(Strict Products Liability)

48. Plaintiff repeats, realleges and reiterates herein the allegations contained in paragraphs "1" through "47" above inclusive as though more fully set forth herein at length.

49. On December 9, 2023, plaintiff's subrogor, Sibaja sustained damage as a result of a fire originating due to the Honeywell Thermostat installed within the Premises.

50. Relying upon said warranties of defendant Honeywell, plaintiff's subrogor, Sibaja proceeded to use the aforementioned Honeywell Thermostat/Owner's Manual in accordance with its intended use.

51. On December 9, 2023, plaintiff's subrogor, Sibaja while using said product in accordance with its intended use, sustained property damage.

52. The aforesaid accident was caused solely and wholly by reason that defendant Honeywell in that they breached their warranty of product merchantability and fitness for the intended use of the said product which warranties were both express and implied.

53. The said product was defective and unreasonably dangerous and that said defective and unreasonably dangerous conditions were a substantial factor in causing the property damage to Sibaja.

54. By reason of the foregoing, the defendant Honeywell by their agents, licensees and/or employees are liable to plaintiff Merrimack for strict liability and tort, and/or strict products liability.

55. Thereafter, Merrimack, upon information and belief, paid the sum of at least $584,321.40, with remaining payments and is now subrogated to the rights of Sibaja against defendant Honeywell. NYSCEF 4.

**WHEREFORE**, plaintiff Merrimack Mutual Fire Insurance Company demands judgment as follows:

**A.** On all claims and causes of action for relief against defendant Honeywell International Inc., in a fair and reasonable amount to be determined at trial in the sum of at least $584,321.40, with remaining payments; and

**B.** The costs and disbursements of this action and such other and further relief as to this Court may deem just and proper.

Dated: New York, New York
September 24, 2024

Yours, etc.

_______________________________
GOETZ SCHENKER BLEE & WIEDERHORN
By: Jeffrey Rubinstein, Esq.
Attorneys for Plaintiffs
101 Greenwich Street, 20th Floor
New York, New York 10006
(212) 363-6900
Our File No.: 20308-MMS
jrubinstein@gsbwlaw.com

TO:

*All Parties Via NYSCEF*

Swanson, Martin & Bell, LLP
*Attorneys for Defendant*
*HONEYWELL INTERNATIONAL INC.*
330 North Wabash Avenue – Suite 3300
Chicago, IL 60611
dkawala@smbtrials.com
berogers@smbtrials.com

**VERIFICATION**

Jeffrey Rubinstein, being duly sworn, deposes and says:

That he is the attorney for the plaintiff MERRIMACK MUTUAL FIRE INSURANCE COMPANY in the within action; that he has read the within Verified Complaint and knows the contents thereof, and that same is true to his own knowledge, except and to the matters herein stated to be alleged upon information and belief, and that as to those matters he believes it to be true.

That the sources of his information and knowledge are investigation and records on file.

That the reason this verification is being made by deponent and not by plaintiff MERRIMACK MUTUAL FIRE INSURANCE COMPANY is that the plaintiff is not within the county where deponent has his office.

______________________________
JEFFREY RUBINSTEIN, ESQ.